**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, <br><br> Plaintiff, <br><br> -against- <br><br> ALCIBIADES CIFUENTES, JENNIFER WEE CIFUENTES, and CIFUENTES FUND MANAGEMENT, LLC, <br><br> Defendants. | Civil Action No. _____ <br><br> COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND FOR CIVIL MONETARY PENALTIES UNDER THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS |

Plaintiff U.S. Commodity Futures Trading Commission ("Commission") alleges as follows:

## I.       INTRODUCTION

1.       From at least April 2013 through March 2015 (the "Relevant Period"), Alcibiades Cifuentes ("Cifuentes") and Jennifer Wee Cifuentes, f/k/a Jennifer Fernandez Wee ("Wee"), individually and as founders and principals of Cifuentes Fund Management, LLC ("CFM"), (collectively, "Defendants") engaged in a fraudulent scheme to solicit and misappropriate funds for a pooled investment vehicle in off-exchange leveraged or margined foreign currency exchange ("forex") contracts in violation of the Commodity Exchange Act ("Act") and its implementing regulations ("Regulations").

2.       Cifuentes and Wee, through CFM, devised a sham forex pool in order to finance their lavish lifestyles with funds misappropriated from pool participants.  To execute their scheme, Cifuentes and Wee knowingly made fraudulent and material misrepresentations and

omissions about their forex trading strategy and investment returns to persuade at least 24 individuals ("pool participants") to transfer approximately $590,000 to Defendants for the purpose of participating in a pooled forex investment vehicle.

3.      To entice pool participants, Cifuentes and Wee knowingly and falsely represented that certain fictitious practice forex trades – carefully selected from a demonstration, or "demo," account with no risk of loss – represented actual, and profitable, forex trades.  Cifuentes and Wee also fraudulently represented that CFM would pay pool participants "guaranteed" monthly returns equal to 10% of each deposit, paid quarterly.  Cifuentes and Wee made these false representations with the intent to defraud pool participants.

4.      Rather than trading forex contracts with pool participants' funds, Cifuentes and Wee – often without even attempting to trade the money entrusted to them – immediately misappropriated all or most of pool participants' funds and used them to purchase luxury vehicles, jewelry, and clothing for themselves, among other items.  To prevent their fraud from being uncovered, Cifuentes and Wee also diverted pool participants' deposits to other victims as "dividends" in the manner of a Ponzi scheme.

5.      To further conceal their fraud from pool participants, Cifuentes and Wee fabricated account statements that falsely represented to pool participants that their funds were deposited into CFM accounts and were generating significant returns.  The fabricated account statements did not disclose that Cifuentes and Wee had actually stolen all or most of pool participants' funds and that the stated returns were, in fact, illusory.

6.      By virtue of this conduct, and as more fully set forth below, Defendants have engaged, are engaging, and/or are about to engage in acts and practices in violation of provisions

of the Act, 7 U.S.C. §§ 1–26 (2012), and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1–190.10 (2016).

7.      Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), the Commission seeks civil monetary penalties and remedial ancillary relief including, but not limited to, trading and registration bans, restitution, disgorgement, rescission, pre- and post-judgment interest, and such other relief as the Court may deem necessary and appropriate.

## II.      JURISDICTION AND VENUE

8.      This Court possesses jurisdiction over this action pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1 (2012), which authorizes the Commission to seek injunctive and other relief against any person whenever it appears to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder, and Section 2(c)(2)(C) of the Act, 7 U.S.C. § 2(c)(2)(C) (2012), which provides the Commission with jurisdiction over the forex solicitations and transactions at issue in this action.

9.      Venue lies properly in this District pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012), because Cifuentes and Wee reside in, transacted business in, and committed acts and practices in violation of the Act and Regulations individually and on behalf of CFM within this District.

## III.      THE PARTIES

10.      Plaintiff U.S. Commodity Futures Trading Commission is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Act and Regulations.  The Commission maintains its principal office at 1155 21st Street N.W., Washington, DC 20581.

11.     Defendant Alcibiades Cifuentes is the spouse of Wee and, along with Wee, is one of two founders and principals of CFM.  During the Relevant Period, Cifuentes was the Chief Executive Officer, Member, and Managing Principal of CFM.  Along with Wee, Cifuentes is a signatory on the bank accounts and forex trading accounts used by and on behalf of CFM.  Cifuentes resides in West New York, New Jersey.  Cifuentes has never been registered in any capacity with the Commission.

12.     Defendant Jennifer Wee Cifuentes is the spouse of Cifuentes and, along with Cifuentes, is one of two founders and principals of CFM.  During the Relevant Period, Wee was the Head of Trading and Risk Management and the Managing Principal of CFM.  Along with Cifuentes, Wee is a signatory on the bank accounts and forex trading accounts used by and on behalf of CFM.  Wee resides in West New York, New Jersey.  Wee has never been registered in any capacity with the Commission.

13.     Defendant Cifuentes Fund Management, LLC is a Delaware limited liability company organized on June 11, 2013.  CFM lists its principal place of business as New York, New York.  CFM is the alter ego of Cifuentes and Wee.  During the Relevant Period, Cifuentes and Wee were the sole managers of CFM, Cifuentes and Wee were the only principals and employees of CFM, Cifuentes and Wee comingled their personal funds with the funds of CFM, and CFM held itself out as the "DBA" (doing business as) entity of Cifuentes and Wee.

IV.     FACTS

A.     Operation of CFM

14.     On or about November 17, 2012, Cifuentes and Wee, in their names, opened joint forex trading account *2899 with GFT Global Markets UK Ltd. ("GFT"), (the "Trading Account"), a now defunct online foreign exchange trading firm based in London, United Kingdom ("UK").  On or about February 19, 2013, Cifuentes and/or Wee made a sole deposit of

$3,490.44 into the Trading Account.  By April 23, 2013, loss-making forex trades by Cifuentes and/or Wee reduced the balance of the Trading Account to $130.94, meaning that in less than six months Cifuentes and/or Wee had lost 96.25% of their original balance through forex trading.

15.     In addition to offering live forex trading accounts, GFT permitted users to establish "practice," or "demo," forex trading accounts to become familiar with the GFT trading platform without risking real money.  Trades placed in GFT practice accounts were for demonstration purposes only and did not involve the actual purchase or sale of forex contracts.

16.     In or around April 2013 Cifuentes and Wee established a GFT practice forex trading account (the "Demo Account").  While Cifuentes and Wee occasionally made a "profitable" practice trade in the Demo Account, the Demo Account on balance returned fictitious net "losses" that exceeded $5 million during the Relevant Period.

17.     On or about May 1, 2013, Cifuentes and Wee registered the Internet domain name www.cifuentesfund.com, which they used to host CFM's public website (the "CFM Website").  Cifuentes and Wee at all times managed and controlled the CFM Website and used the CFM Website to solicit pool participants to transfer funds to Defendants.

18.     During the Relevant Period, Cifuentes and Wee knowingly used the CFM Website to solicit funds for a pooled investment vehicle that is not an eligible contract participant in connection with off-exchange leveraged or margined forex contracts without being registered with the Commission and make numerous fraudulent and false misrepresentations and material omissions designed to attract pool participants.  For example, Cifuentes and Wee selected screenshots of their occasional fictitious profit-generating forex trades from the Demo Account and posted them to the CFM Website, falsely representing that these practice trades reflected CFM's actual forex trades.  Cifuentes and Wee did not disclose to prospective pool participants

that the posted practice trades were fictitious, that the posted practice trades involved no money and no risk, or that overall the Demo Account was actually suffering massive net "losses."

19. Cifuentes and Wee used the CFM Website to market CFM's purported investment opportunities, including an "FX Certificate of Deposit." Through the CFM Website, Cifuentes and Wee described the FX Certificate of Deposit as a forex investment that generated profits "guaranteed at a fixed rate of return of 10% per month," with 6-month and 12-month deposits respectively yielding "60% growth on expiration" or "120% growth on expiration."

20. In addition to the CFM Website, Cifuentes and Wee used e-mail communications, telephone discussions, and face-to-face meetings to solicit pool participants to make initial deposits into CFM or to increase their deposits into CFM. During these communications, Cifuentes and Wee often represented that deposits into CFM would yield "guaranteed" returns of 10% per month, paid quarterly.

21. At the direction of Cifuentes and Wee, pool participants entered into Subscription Agreements with "Alcibiades Cifuentes and/or [sic] Jennifer Wee Cifuentes DBA Cifuentes Fund Management, LLC." The Subscription Agreements provided that Defendants would transfer "securities" reflecting a "limited partnership interest" to a pool participant in exchange for the pool participant's transfer of funds to Defendants. The Subscription Agreements further provided that each pool participant would receive, on a quarterly basis, monthly dividends "guaranteed to be no less than" 10 percent of the pool participant's principal deposits. The Subscription Agreements also provided that pool participants could withdraw their funds from CFM and would receive redemptions via wire transfer, subject to "a 30-business day waiting period." Cifuentes and Wee often directed existing pool participants seeking to deposit

additional funds with CFM to enter into new Subscription Agreements covering the additional deposits.

22.     At the direction of Cifuentes and Wee, pool participants transferred funds via wire and check payments to two CFM bank accounts (Wells Fargo account *2449 and Santander Bank account *1166), as well as to one individual personal bank account of Cifuentes and six individual personal bank accounts of Wee.

23.     Upon information and belief, Cifuentes and Wee never transferred pool participants' funds to the Trading Account or used pool participant funds to trade forex.  Instead, Cifuentes and Wee misappropriated all or most of pool participants' funds – sometimes by withdrawing pool participants' funds the very day such funds were deposited in Defendants' bank accounts – to finance Cifuentes's and Wee's lavish lifestyles and pay for their personal expenses.

24.     For example, on May 20, 2014, pool participant R.V. wired $30,000 in pool participant funds to Cifuentes's Citibank account *3584, which at the time held a balance of $174.15.  That same day, Cifuentes and/or Wee drew a $25,000 cashier's check on Citibank account *3584, made payable to a luxury car dealer in Secaucus, New Jersey.  Also on May 20, 2014, Cifuentes and/or Wee used Citibank account *3584 to make a debit card purchase of approximately $5,000 at Omega Boutique, a high-end watch vendor in Hackensack, New Jersey.

25.     To prevent pool participants from discovering their fraud, Cifuentes and Wee also misappropriated pool participants' deposits in the manner of a Ponzi scheme by diverting pool participants' funds to other pool participants and falsely characterizing them as "dividends."

26.     Throughout the Relevant Period, Cifuentes and Wee falsely and fraudulently represented to pool participants that their funds were used to trade or invest in forex contracts

and that money deposited with Defendants was safe, insured, and subject to rigorous risk-management procedures.  At no point did Cifuentes or Wee disclose to pool participants that their funds were being misappropriated.

### B.  Fraudulent Representations to Pool Participants

27.     During the Relevant Period, Cifuentes and Wee knowingly used the CFM Website to make the following false and fraudulent statements and material omissions to induce pool participants to transfer funds to Defendants and to conceal Defendants' fraudulent scheme from detection, among others:

a)  Cifuentes and Wee posted Demo Account excerpts to the CFM Website and represented them as CFM's real forex trades placed between May and June 2013. These representations were false and fraudulent because the Demo Account excerpts did not reflect actual forex trades by CFM, and Cifuentes and Wee selected only "profitable" fictitious trades to create the false impression that CFM's trades were successful.

b)  Cifuentes and Wee represented, "what we can guarantee is that our clients [sic] money will always be traded by reputable and financially strong Futures & Commodities Merchants who are registered and regulated internationally."  This statement was false and fraudulent because Cifuentes and Wee did not trade pool participants' funds, and instead misappropriated such funds for their personal use.

c)  Cifuentes and Wee represented that FX Certificates of Deposit purchased from CFM were "guaranteed at a fixed rate of return of 10% per month," that 6-month Certificates would yield "10% per month @ 60% GROWTH ON EXPIRATION," and that 12-month Certificates would yield "10% per month @ 120% GROWTH

ON EXPIRATION." These representations were false and fraudulent because Cifuentes and Wee knowingly misappropriated all or most of pool participants' funds, never purchased FX Certificates of Deposit, and because pool participants did not receive the "guaranteed" returns.

d) Cifuentes and Wee represented that pool participants' deposits were "FDIC Insured" and were protected from loss by an "Investor Compensation Fund." These representations were false and fraudulent because Cifuentes and Wee knew at the time that pool participants' funds were not insured and that CFM did not have an Investor Compensation Fund.

e) Cifuentes and Wee represented that CFM achieved profitability "through algorithmic trading" involving "diversified currencies and strategies." These representations were false and fraudulent because Cifuentes and Wee knew at the time that CFM was not profitable, did not utilize algorithmic trading, did not trade pool participants' funds in currencies (or anything), and did not employ any trading strategies.

f) Cifuentes and Wee made material omissions to pool participants and prospective pool participants, including by failing to disclose that: (i) Defendants did not have a history of profitable forex trading; (ii) Defendants did not trade forex with pool participants' funds; (iii) Cifuentes and Wee misappropriated pool participants' funds for their personal use and to pay "dividends" to other pool participants; and (iv) the Demo Account had actually "lost" $5 million during the Relevant Period.

28.     Throughout the Relevant Period, Cifuentes and Wee knowingly made additional false and fraudulent representations about their forex trading abilities and CFM's "guaranteed" returns to pool participants and prospective pool participants via face-to-face meetings, e-mail, and the telephone.  These fraudulent communications were intended to lure pool participants into depositing funds with CFM.

29.     Induced by Cifuentes's and Wee's false and fraudulent representations, pool participant N.M. entered into a Subscription Agreement with Defendants on November 1, 2013. The Subscription Agreement falsely promised N.M. monthly dividends "guaranteed to be no less than" 10% of N.M.'s $20,000 principal deposit, paid quarterly.

30.     Between November 30, 2013, and April 4, 2014, N.M. entered into three additional Subscription Agreements with Cifuentes and Wee, each of which falsely promised N.M. monthly dividends of 10% of principal, paid quarterly.

31.     Based upon Cifuentes's and Wee's false and fraudulent representations, N.M. transferred a total of $76,000 in pool participant funds to Defendants via check and wire payments during the Relevant Period.  Cifuentes and Wee misappropriated N.M.'s funds for their personal use almost immediately.

32.     By way of example, on April 4, 2014, N.M. wired $16,000 in pool participant funds to CFM's Santander Bank account *1166, which Cifuentes and/or Wee had opened with a balance of $500 on the prior day.  On or about April 7, 2014, Cifuentes and/or Wee drew a $9,500 check on Santander account *1166, made payable to a luxury car dealer in Secaucus, New Jersey.  Three days later, on April 10, 2013, Cifuentes and/or Wee made a $6,000 cash withdrawal from Santander account *1166.  The $6,000 cash withdrawal was misappropriated by

Cifuentes and/or Wee and was not used to trade or invest in forex (or anything else) on behalf of N.M.

33.     Pool participant R.V. also lost money as a result of Cifuentes's and Wee's false and fraudulent representations.  Induced by Cifuentes's and Wee's false and fraudulent representations and omissions, R.V. executed three Subscription Agreements with Cifuentes and Wee between February 27, 2013, and May 19, 2014, each of which falsely promised R.V. "guaranteed" monthly dividends equal to 10% of principal, paid quarterly.

34.      Based upon Cifuentes's and Wee's false and fraudulent representations, on May 20, 2014, R.V. made six wire transfers to Defendants totaling $126,000.  Cifuentes and Wee immediately misappropriated all or most of R.V.'s funds to pay for their personal expenses and/or to support their lavish lifestyles, including luxury vehicles and jewelry.

35.     To conceal their misappropriation of N.M.'s and R.V.'s pool participant funds, Cifuentes and Wee generated false and fraudulent account statements during the Relevant Period.  The fabricated account statements provided fake "Returns Earned," and identified illusory balances in N.M.'s and R.V.'s CFM accounts.  In reality, such returns did not exist, and Cifuentes and Wee had long since misappropriated N.M.'s and R.V.'s funds.

36.     To prevent their fraud from being detected, Cifuentes and Wee at various times during the Relevant Period provided pool participants with "dividends" paid by check and wire transfer.  Contrary to Cifuentes's and Wee's representations, these "dividend" checks were not the result of profitable forex trading or investment, but were the diverted funds of other pool participants.  By way of example, between September 5, 2014, and January 5, 2015, Defendants used CFM's Wells Fargo Bank account *2449 to write six "dividend" checks payable to N.M., each in the amount of $6,000.  Cifuentes signed each check on behalf of CFM.

37.     While some pool participants during portions of the Relevant Period received the "dividend" payments they expected, others did not.  On or about August 14, 2014, Wee, unable to access sufficient funds to provide pool participant R.V. with an expected dividend of $19,400, wired a "partial" dividend of $3,939 to R.V.  Between August and October 2014, Wee knowingly made a series of false statements to R.V. to explain why the full dividend amounts R.V. expected had not been paid, including that:  (i) financial institution delays were to blame for the incomplete dividend payments; (ii) Wee had sent wire transfers to R.V. that she had not in fact sent; and (iii) fictitious international "bankers" acting on behalf of CFM were unavailable to submit wire transfers.  Wee knowingly made these false statements for the purpose of concealing from R.V. that Cifuentes and Wee had misappropriated all or most of R.V.'s deposits with CFM.

<u>STATUTORY AND REGULATORY VIOLATIONS</u>

<u>COUNT ONE</u>

FRAUD IN CONNECTION WITH FOREX CONTRACTS
Violations of Sections 4b(a)(2)(A)-(C) of the Act and Regulation 5.2(b)

38.     The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

39.     Section 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(2)(A)-(C) (2012), makes it unlawful

> for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or swap, that is made, or to be made, for or on behalf of, or with, any other person other than on or subject to the rules of a designated contract market – (A) to cheat or defraud or attempt to cheat or defraud the other person; (B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; [or] (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order

or contract for or, in the case of paragraph (2), with the other person.

40.     Section 2(c)(2)(C)(iv) of the Act, 7 U.S.C. § 2(c)(2)(C)(iv) (2012), states that Section 4b of the Act, 7 U.S.C. § 6b (2012), applies to the forex transactions, agreements, or contracts offered by Defendants as if they were contracts of sale of a commodity for future delivery.

41.     Regulation 5.2(b), 17 C.F.R. § 5.2(b) (2016), makes it unlawful

> for any person, by use of the mails or by any means or instrumentality of interstate commerce, directly or indirectly, in or in connection with any retail forex transaction:  (1) To cheat or defraud or attempt to cheat or defraud any person; (2) Willfully to make or cause to be made to any person any false report or statement or cause to be entered for any person any false record; or (3) Willfully to deceive or attempt to deceive any person by any means whatsoever.

42.     During the Relevant Period, Cifuentes and Wee cheated or defrauded or attempted to cheat or defraud other persons; issued or caused to be issued false statements and records; and willfully deceived or attempted to deceive other persons in connection with offering of, or entering into the off-exchange leveraged or margined forex transactions alleged herein, by, among other things:  (i) fraudulently soliciting pool participants and prospective pool participants by making material misrepresentations and omissions about Defendants' forex trading and investing abilities, strategies, and profits; (ii) misappropriating pool participants' funds; and (iii) fabricating false records and account statements, all in violation of Section 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(2)(A)-(C) (2012), and Regulation 5.2(b), 17 C.F.R. § 5.2(b) (2016).

43.     Cifuentes and Wee engaged in the acts and practices described above knowingly, willfully or with reckless disregard for the truth.

44.     The foregoing acts of fraudulent solicitation, misappropriation, and false statements by Cifuentes and Wee occurred within the scope of their employment, office, or agency with CFM.  Therefore, CFM is liable for Cifuentes's and Wee's violations of the Act and Regulations, as alleged in this count, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2016).

45.     Cifuentes and Wee, directly or indirectly, controlled CFM, and did not act in good faith, or knowingly induced, directly or indirectly, the acts constituting CFM's violations of the Act and Regulations alleged in this count.  Cifuentes and Wee are thereby liable for CMF's violations of the Act and Regulations, as alleged in this count, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012).

46.     Each act of fraudulent solicitation, misappropriation, and false statement or report, including but not limited to those specifically alleged herein, is alleged as separate and distinct violations of Section 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(2)(A)-(C) (2012), and Regulation 5.2(b), 17 C.F.R. § 5.2(b) (2016).

<u>COUNT TWO</u>

FRAUD BY A COMMODITY POOL OPERATOR
Violations of Section 4<u>o</u>(1)(A) and (B) of the Act and Regulation 4.41(a)

47.     The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

48.     Section 4<u>o</u>(1) of the Act, 7 U.S.C. § 6<u>o</u>(1) (2012), makes it unlawful for Commodity Pool Operators ("CPO") and associated persons of CPOs

> by use of the mails or any other means or instrumentality of interstate commerce, directly or indirectly – (A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or (B) to engage in any transaction, practice, or course of business which operates as a

fraud or deceit upon any client or participant or prospective client
or participant.

49.     Regulation 5.4, 17 C.F.R. § 5.4 (2016), states that Part 4 of the Regulations, 17

C.F.R. §§ 4.1 – 4.41 (2016), applies to any person required to register as a CPO pursuant to Part

5 of the Regulations related to off-exchange forex transactions, 17 C.F.R. §§ 5.1 – 5.25 (2016).

50.     Regulation 4.41(a), 17 C.F.R. § 4.41(a) (2016), makes it unlawful for any CPO, or

any principal thereof, to publish, distribute, or broadcast, whether by electronic media or

otherwise, any report, letter, circular, memorandum, publication, writing, advertisement, or other

literature or advice that (1) employs any device, scheme, or artifice to defraud any participant or

client or prospective participant or client; or (2) involves any transaction, practice, or course of

business which operates as a fraud or deceit upon any participant or client or any prospective

participant or client.

51.     As alleged herein, CFM was required to register as a CPO during the Relevant

Period.

52.     As set forth above, during the Relevant Period, CFM, through Cifuentes and Wee,

acted as a CPO by soliciting, accepting, or receiving funds from the public while engaged in a

business that is of the nature of an investment trust, syndicate, or similar form of enterprise, for

the purpose of, among other things, trading in off-exchange leveraged or margined forex

contracts.  Cifuenetes and Wee acted as associated persons of a CPO because they were partners,

officers, employees, consultants, or agents of a CPO in a capacity that involved the solicitation of

funds, securities, or property for participation in a commodity pool.

53.     CFM, through Cifuentes and Wee, and Cifuentes and Wee in their individual

capacities, violated Section 4o(1)(A) and (B) of the Act, 7 U.S.C. § 6o(1)(A) and (B) (2012), and

Regulation 4.41(a), 17 C.F.R. § 4.41(a) (2016), in that they employed or are employing a device,

scheme, or artifice to defraud actual and prospective pool participants or engaged or are engaging in transactions, practices, or a course of business which operated or operates as a fraud or deceit upon pool participants or prospective pool participants.  The fraudulent acts include those described in Counts One and Two of this Complaint, as set forth above. 54.  Cifuentes and Wee, directly or indirectly, controlled CFM, and did not act in good faith, or knowingly induced, directly or indirectly, the acts constituting CFM's violations of the Act and Regulations alleged in this count.  Cifuentes and Wee are thereby liable for CMF's violations of the Act, as alleged in this count, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012).

54.     The foregoing acts of fraudulent solicitation, misappropriation, and false statements by Cifuentes and Wee occurred within the scope of their employment, office, or agency with CFM.  Therefore, CFM is liable for Cifuentes's and Wee's violations of the Act, as alleged in this count, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2016).

55.     Each act of fraudulent solicitation, misappropriation, and false statement or report, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4o(1) of the Act, 7 U.S.C. § 6o(1) (2012), and Regulation 4.41(a), 17 C.F.R. § 4.41(a) (2016).

<u>COUNT THREE</u>

FAILURE TO REGISTER AS A COMMODITY POOL OPERATOR
Violation of Sections 2(c)(2)(C)(iii)(I)(cc) and 4m(1) of the Act and Regulation 5.3(a)(2)(i)

56.     The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

57.     Section 2(c)(2)(C)(iii)(I)(cc) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(cc) (2012), makes it unlawful for any person, unless registered in such capacity as the Commission shall

determine, to operate or solicit funds, securities, or property for any pooled investment vehicle that is not an eligible contract participant (as defined by Section 1a(18) of the Act, 7 U.S.C. § 1(18) (2012)) in connection with agreements, contracts, or transactions described in Section 2(c)(2)(C)(i) of the Act, 7 U.S.C. § 2(c)(2)(C)(i) (2012) (leveraged or margined forex transactions), entered into with or to be entered into with a person who is not described in item (aa), (bb), (ee), or (ff) of Section 2(c)(2)(B)(i)(II) of the Act, 7 U.S.C. § 2(c)(2)(B)(i)(II) (2012) (describing counterparties such as registered futures commission merchants).

58.     As set forth above, during the Relevant Period, CFM, through Cifuentes and Wee, acted as a CPO by soliciting, accepting, or receiving funds from the public while engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, for the purpose of, among other things, trading in off-exchange leveraged or margined forex contracts.

59.     Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012), makes it unlawful for any CPO, unless registered with the Commission, to make use of the mails or any means or instrumentality of interstate commerce in connection with its business as a CPO.

60.     During the Relevant Period, CFM, through Cifuentes and Wee, made use of the mails or any means or instrumentality of interstate commerce in connection with its business as a CPO, while failing to register with the Commission, in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012).

61.     Regulation 5.3(a)(2)(i), 17 C.F.R. § 5.3(a)(2)(i) (2016), requires any CPO engaged in retail forex transactions to register with the Commission.  Regulation 5.1(d)(1), 17 C.F.R. § 5.1(d)(1) (2016), defines a CPO as any person who "operates or solicits funds,

securities, or property for a pooled investment vehicle . . . that engages in retail forex transactions."

62.     During the Relevant Period CFM, through Cifuentes and Wee, acted as a CPO because it solicited funds, securities, or property for a pooled investment vehicle that was not an eligible contract participant and engaged in off-exchange leveraged or margined forex transactions.

63.     During the Relevant Period, CFM was not exempt from registering as a CPO.

64.     Cifuentes and Wee, directly or indirectly, controlled CFM, and did not act in good faith, or knowingly induced, directly or indirectly, the acts constituting CFM's violations of the Act alleged in this count.  Cifuentes and Wee are thereby liable for CMF's violations of the Act, as alleged in this count, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012).

<u>COUNT FOUR</u>

FAILURE TO REGISTER
AS ASSOCIATED PERSONS OF A COMMODITY POOL OPERATOR
Violation of Section 4k(2) of the Act and Regulations 3.12 and 5.3(a)(2)(ii)

65.     The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

66.     Section 4k(2) of the Act, 7 U.S.C. § 6k(2) (2012), and Regulation 5.3(a)(2)(ii), 17 C.F.R. § 5.3(a)(2)(ii) (2016), require registration with the Commission for any person who is associated with a CPO as a partner, officer, employee, consultant, or agent (or any person occupying a similar status or performing similar functions), in any capacity that involves the solicitation of funds, securities, or property for participation in a commodity pool or the supervision of any person or persons so engaged.

67.     Section 4k(2) of the Act, 7 U.S.C. § 6k(2) (2012), also makes it unlawful for any CPO to permit any person not registered with the Commission to become or remain associated with the CPO in any capacity described in the preceding paragraph when the CPO knew or should have known that such person was not registered with the Commission or that such registration had expired, been suspended (and the period of suspension has not expired), or been revoked.

68.     Regulation 3.12, 17 C.F.R. § 3.12 (2016), prohibits any person from being an associated person of a CPO unless that person is registered with the Commission as an associated person of the sponsoring CPO.

69.     Regulation 5.1(d)(2), 17 C.F.R. § 5.1(d)(2) (2016), defines an associated person, for purposes of the Part 5 of the Regulations relating to forex transactions, as any natural person associated with a CPO (as that term is defined in Regulation 5.1(d)(1), 17 C.F.R. § 5.1(d)(1) (2016)) as a partner, officer, employee, consultant, or agent that is involved in the solicitation of funds, securities, or property, or the supervision of any such person so engaged.

70.     Regulation 5.3(a)(2)(ii), 17 C.F.R. § 5.3(a)(2)(ii) (2016), requires any associated person of a CPO engaged in retail forex transactions to register with the Commission.

71.     During the Relevant Period, Cifuentes and Wee, who have never been registered with the Commission in any capacity, acted as associated persons of a CPO by:  (i) soliciting funds, securities, or property for participation in a commodity pool operated by CFM and/or supervised persons so engaged, and (ii) operating or soliciting funds, securities, or property for the CFM pooled investment vehicle, which was not an eligible contract participant, in connection with off-exchange leveraged or margined forex transactions.

RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that the Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), and pursuant to its equitable powers, enter:

a)    an order finding Cifuentes and Wee liable for violating Sections 2(c)(2)(C)(iii)(I)(cc), 4b(a)(2)(A)-(C), 4k, 4m(1), and 4o(1)(A) and (B) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6b(a)(2)(A)-(C), 6k, 6m(1), and 6o(1)(A) and (B) (2012), and Regulations 3.12, 4.41(a), 5.2(b), 5.3(a)(2)(i), and 5.3(a)(2)(ii), 17 C.F.R. §§ 3.12, 4.41(a), 5.2(b), 5.3(a)(2)(i), and 5.3(a)(2)(ii) (2016);

b)    an order of permanent injunction prohibiting Cifuentes and Wee, and any other person or entity associated with them, from engaging in conduct that violates Sections 2(c)(2)(C)(iii)(I)(cc), 4b(a)(2)(A)-(C), 4k, 4m(1), and 4o(1)(A) and (B) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6b(a)(2)(A)-(C), 6k, 6m(1), and 6o(1)(A) and (B) (2012), and Regulations 3.12, 4.41(a), 5.2(b), 5.3(a)(2)(i), and 5.3(a)(2)(ii), 17 C.F.R. §§ 3.12, 4.41(a), 5.2(b), 5.3(a)(2)(i), and 5.3(a)(2)(ii) (2016);

c)    an order of permanent injunction prohibiting Cifuentes and Wee and any of their agents, servants, employees, assigns, attorneys, holding companies, alter egos, and persons in active concert or participation with Defendants, including any of their successors, from, directly or indirectly:

(i)    trading on or subject to the rules of any registered entity (as that term is defined in Section la(40) of the Act, 7 U.S.C. § la(40) (2012));

(ii)    entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3(yy), 17 C.F.R. § 1.3(yy) (2014) for their own personal account or for any account in which they have a direct or indirect interest; ;

(iii)    having any commodity interests traded on their behalf;

(iv)      controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

(v)       soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

(vi)      applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2016);

(vii)      acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2016)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2016);

(viii)     Engaging in any business activities related to commodity interests;

d)       An order directing Defendants, as well as any successors thereof, holding companies, and alter egos, to disgorge, pursuant to such procedure as the Court may order, all benefits received from the acts or practices which constitute violations of the Act and Regulations, as described herein, and pre- and post-judgment interest thereon from the date of such violations;

e)       An order directing Defendants, as well as any successors thereof, to make full restitution to every person or entity whose funds they received or caused another person or entity to receive as a result of acts and practices that constituted violations of the Act and Regulations, as described herein, and pre- and post-judgment interest thereon from the date of such violations;

f)      An order directing Defendants, as well as any successors thereof, holding companies, and alter egos, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between them and any pool participants whose funds were received by them as a result of the acts and practices which constituted violations of the Act and Regulations, as described herein;

g)      An order directing Defendants to pay a civil monetary penalty for each violation of the Act and Regulations described herein, plus post-judgment interest, in the amount of the higher of:  1) $140,000 for each violation of the Act and Regulations committed on or after October 23, 2008; or 2) triple the monetary gain to defendants for each violation of the Act and Regulations, plus post-judgment interest;

h)      An order requiring Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2) (2012); and

i)      Such other and further relief as the Court deems proper.


Dated:   September 30, 2016                  Respectfully submitted,

                                             U.S. COMMODITY FUTURES
                                             TRADING COMMISSION

                                             s/ Daniel J. Grimm
                                             Daniel J. Grimm
                                             John Einstman
                                             Paul G. Hayeck
                                             U.S. Commodity Futures Trading Commission
                                             Division of Enforcement
                                             1155 21st Street, N.W.
                                             Washington, D.C. 20581
                                             p:  (202) 418-5000
                                             f:  (202) 418-5523
                                             DGrimm@cftc.gov
                                             JEinstman@cftc.gov
                                             PHayeck@cftc.gov

## LOCAL CIVIL RULE 11.2 CERTIFICATION

Pursuant to Local Civil Rule 11.2, I certify that the matter in controversy in the foregoing Complaint is not the subject of any other civil action pending in any court, or of any pending arbitration or administrative proceeding.  A related criminal action against Defendants Alcibiades Cifuentes and Jennifer Wee Cifuentes is currently pending before this Court (*United States of America v. Alcibiades Cifuentes and Jennifer Wee Cifuentes*, No. 16-CR-6559 (JAD)), and a related state administrative proceeding against all Defendants has resulted in a summary penalty and cease-and-desist order (*In the Matter of Alcibiades Cifuentes et al*. (N.J. Bur. Sec., filed May 27, 2016)).

Dated:   September 30, 2016                U.S. COMMODITY FUTURES
                                           TRADING COMMISSION

                                           s/ Daniel J. Grimm
                                           Daniel J. Grimm
                                           U.S. Commodity Futures Trading Commission
                                           Division of Enforcement
                                           1155 21st Street, N.W.
                                           Washington, D.C. 20581
                                           p:  (202) 418-5000
                                           f:  (202) 418-5523
                                           DGrimm@cftc.gov

## DESIGNATION PURSUANT TO LOCAL CIVIL RULE 101.1(f)

Pursuant to Local Civil Rule 101.1(f), I designate the United States Attorney for the

District of New Jersey to receive service of all notices or papers in this action at the following

address:

> Leticia B. Vandehaar
> Deputy Chief, Civil Division
> United States Attorney's Office
> District of New Jersey
> 970 Broad Street, Suite 700
> Newark, New Jersey 07102

Dated:   September 30, 2016       U.S. COMMODITY FUTURES
                                  TRADING COMMISSION

                                  s/ Daniel J. Grimm
                                  Daniel J. Grimm
                                  U.S. Commodity Futures Trading Commission
                                  Division of Enforcement
                                  1155 21st Street, N.W.
                                  Washington, D.C. 20581
                                  p:  (202) 418-5000
                                  f:  (202) 418-5523
                                  DGrimm@cftc.gov