**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

U.S. COMMODITY FUTURES
TRADING COMMISSION,

         Plaintiff,

       -against-

ALCIBIADES CIFUENTES,
JENNIFER WEE CIFUENTES, and
CIFUENTES FUND MANAGEMENT, LLC,

        Defendants.

Civil Action No. 2:16-cv-06167 (ES) (JAD)

## ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT, PERMANENT INJUNCTION, CIVIL MONETARY PENALTY, AND EQUITABLE RELIEF

Before the Court is Plaintiff U.S. Commodity Futures Trading Commission's ("Plaintiff," "CFTC," or "Commission") Motion for Entry of Default Judgment, Permanent Injunction, Civil Monetary Penalty, and Equitable Relief against Defendants Alcibiades Cifuentes ("Cifuentes"), Jennifer Wee Cifuentes ("Wee"), and Cifuentes Fund Management, LLC ("CFM"), (collectively, "Defendants"), pursuant to Federal Rule of Civil Procedure 55(b)(2) and New Jersey Court Rule 4:43-2. For the reasons stated below and good cause having been shown, the motion is **GRANTED**.

### I.    PROCEDURAL HISTORY

1.    On September 30, 2016, the CFTC filed a Complaint for Injunctive and Other Equitable Relief and for Civil Monetary Penalties Under the Commodity Exchange Act and

Commission Regulations ("Complaint") against Defendants for violations of the Commodity Exchange Act (the "Act"), 7 U.S.C. §§ 1-26 (2012), and its implementing regulations ("Regulations"), 17 C.F.R. §§ 1.1-190.10 (2015).  (ECF No. 1).

2.     The Complaint alleges that, from at least April 2013 through March 2015 (the "Relevant Period"), Cifuentes and Wee, through CFM, engaged in a fraudulent scheme to solicit funds for a pooled investment vehicle trading in off-exchange leveraged or margined foreign currency ("forex") contracts.  Rather than use customers' funds to trade forex contracts as promised, Defendants misappropriated the money entrusted to them for the benefit of Cifuentes and Wee.

3.     On October 13, 2016, Plaintiff, pursuant to Federal Rule of Civil Procedure 4(e)(1) and 4(h)(1)(B), caused a copy of the Summons and Complaint to be served on CFM's registered agent in Wilmington, Delaware.  (Ex. C to Decl. of Daniel J. Grimm ("Grimm Decl."), ECF No. 3-2).

4.     In addition to serving CFM, Plaintiff undertook significant efforts to serve the Cifuentes and Wee with the Summons and Complaint, including dispatching process servers on numerous occasions to addresses associated with Cifuentes and Wee, sending the Summons and Complaint via Certified Mail to multiple addresses associated with Cifuentes and Wee, contacting current and former counsel in a related criminal proceeding against Cifuentes and Wee, and publishing notices of this action in the print and online versions of THE STAR-LEDGER.  (Grimm Decl. at ¶¶ 4-10).

5.     On December 29, 2016, based upon Plaintiff's efforts to serve Cifuentes and Wee and the actual service of process upon Defendants as described in paragraphs 3-4 above, Plaintiff moved for entry of default against Defendants (the "Default Motion"), (ECF No. 3).

6.     On December 31, 2016, Plaintiff's process server personally served Wee with the Summons and Complaint.  (ECF No. 4-1, Ex. A).

7.     On January 24, 2017, Plaintiff's process server personally served Cifuentes with the Summons and Complaint.  (ECF No. 5).

8.     On February 10, 2017, the Court issued an order granting the Default Motion as to CFM because CFM failed to respond to the Complaint within the time permitted by Federal Rule of Civil Procedure 12(a) and (b).  (Order Granting in Part Pls. Mot. for Entry of Default Against All Defs. (the "February 10 Order"), ECF No. 6).

9.     The February 10 Order also concluded that Plaintiff's alternative service of the Summons and Complaint on Cifuentes and Wee (described in paragraph 4 above) was sufficient pursuant to Federal Rule of Civil Procedure 4(e)(1) and New Jersey Court Rule 4:4-3(a), and resulted in Cifuentes being served with the Summons and Complaint by, at the latest, December 8, 2016.  (ECF No. 6 at 2).  The Court accordingly placed Cifuentes in default for failing to respond to the Complaint within the time allowed by Federal Rule of Civil Procedure 12(a) and (b).  (*Id*. at 3).

10.    While the February 10 Order determined that Wee had also been adequately served with the Summons and Complaint, the Court denied without prejudice entry of default as to her because Plaintiff voluntarily withdrew the Default Motion as to Wee on January 6, 2017.  (*See* ECF No. 4).

11.     On February 21, 2017, Plaintiff renewed the Default Motion as to Wee, on grounds that Wee was personally served with the Summons and Complaint on December 31, 2016, and failed to respond within the time permitted by Federal Rule of Civil Procedure 12(a) and (b).  (ECF No. 7-1).

12.     On March 17, 2017, the Court granted the Default Motion as to Wee, placing her in default and granting Plaintiff leave to move for a default judgment as to her.  (ECF No. 8).  Plaintiff's instant motion followed.

## II.     FINDINGS OF FACT

**A.     Parties**

13.     Plaintiff CFTC is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Act and Regulations.  The CFTC maintains its principal office at 1155 21st Street N.W., Washington, D.C. 20581.

14.     Defendant Cifuentes is the spouse of Wee and, along with Wee, is one of two founders and principals of CFM.  During the Relevant Period Cifuentes was the Chief Executive Officer, Member, and Managing Principal of CFM.  Along with Wee, Cifuentes is a signatory on the bank accounts and forex trading accounts used by and on behalf of CFM. Cifuentes resides in West New York, New Jersey.  Cifuentes has never been registered in any capacity with the Commission.

15.     Defendant Wee is the spouse of Cifuentes and, along with Cifuentes, is one of two founders and principals of CFM.  During the Relevant Period Wee was the Head of Trading and Risk Management and the Managing Principal of CFM.  Along with Cifuentes, Wee is a signatory on the bank accounts and forex trading accounts used by and on behalf of

CFM. Wee resides in West New York, New Jersey. Wee has never been registered in any capacity with the Commission.

16.     Defendant Cifuentes Fund Management, LLC is a Delaware limited liability company organized on June 11, 2013. CFM lists its principal place of business as New York, New York. CFM is the alter ego of Cifuentes and Wee. During the Relevant Period Cifuentes and Wee were the sole managers of CFM, Cifuentes and Wee were the only principals and employees of CFM, Cifuentes and Wee comingled their personal funds with the funds of CFM, and CFM held itself out as the "DBA" (doing business as) entity of Cifuentes and Wee. CFM has never been registered in any capacity with the Commission.

**B.     The Fraudulent Scheme**

17.     During the Relevant Period Cifuentes and Wee, individually and on behalf of CFM, devised a sham forex pool in order to finance their lavish lifestyles with approximately $590,000 they misappropriated from over 24 members of the public ("pool participants"). To execute their scheme, Cifuentes and Wee knowingly made material misrepresentations and omissions about their forex trading abilities, strategy, and returns to persuade pool participants to transfer funds to Defendants. To prevent their fraud from being uncovered, Cifuentes and Wee fabricated documents, made false statements, and diverted a portion of pool participants' deposits to other victims as "dividends" in the manner of a "Ponzi" scheme.

18.     In or around April 2013, to advance their fraudulent scheme, Cifuentes and Wee established a practice, or demonstration, forex trading account with GFT Global Markets UK Ltd. (the "Demo Account"). Fictitious "trades" placed in the Demo Account

were for demonstration purposes only, posed no risk of loss, and did not involve the actual purchase or sale of forex contracts.

19. Between at least May and June 2014, Cifuentes and Wee lured pool participants to deposit funds with Defendants by selecting fictitious, profitable forex trades from the Demo Account and falsely representing these risk-free trades to be Defendants' actual forex trades. Cifuentes and Wee did not disclose to pool participants that the posted trades were fictitious, or that the Demo Account actually suffered net "losses" exceeding $5 million during the Relevant Period.

20. On or about May 1, 2013, Cifuentes and Wee registered the internet domain name www.cifuentesfund.com, which they used to host a public website that they at all times managed and controlled (the "CFM Website"). Cifuentes and Wee used the CFM Website to make numerous fraudulent statements to pool participants, including that deposits into the CFM pool were traded by "reputable and financially strong Futures & Commodities Merchants who are registered and regulated internationally," that Defendants used "algorithmic trading" strategies to trade pool funds, that customers' deposits were "FDIC Insured," and that CFM "FX Certificate[s] of Deposit" yielded "guaranteed" profits of 60% or 120% upon expiration. Cifuentes and Wee knowingly made these false and fraudulent statements for the purpose of inducing pool participants to transfer funds to Defendants.

21. At the direction of Cifuentes and Wee, pool participants entered into Subscription Agreements with "Alcibiades Cifuentes and/or [sic] Jennifer Wee Cifuentes DBA Cifuentes Fund Management, LLC." The Subscription Agreements provided that Defendants would transfer "securities" reflecting a "limited partnership interest" to a pool

participant in exchange for the pool participant's transfer of funds to Defendants. The Subscription Agreements provided that each pool participant would receive, on a quarterly basis, monthly dividends "guaranteed to be no less than" 10 percent of the pool participant's principal deposits.

22. At the direction of Cifuentes and Wee, pool participants transferred funds via wire and check payments to bank accounts controlled by Defendants. Once funds were deposited into Defendants' bank accounts, Cifuentes and Wee misappropriated all or most of pool participants' funds – sometimes by transfers the very day they cleared Defendants' bank accounts – to finance Cifuentes's and Wee's lifestyles. Among other fraudulent expenditures, Cifuentes and Wee spent pool participants' funds on luxury vehicles, jewelry, and clothing.

23. Throughout the Relevant Period, Cifuentes and Wee falsely and fraudulently represented to pool participants that their funds were used to trade or invest in forex contracts and that money deposited with Defendants was safe, insured, and subject to rigorous risk-management procedures. At no point did Cifuentes or Wee disclose to pool participants that they were misappropriating pool participants' funds.

24. Cifuentes and Wee fabricated account statements that falsely represented to pool participants that their funds were generating significant returns. The fabricated account statements did not disclose that Cifuentes and Wee had stolen all of pool participants' funds.

25. To prevent their fraud from being uncovered, Cifuentes and Wee diverted pool participants' deposits to other victims as "dividends" in the manner of a "Ponzi" scheme.

26.     Cifuentes and Wee also made false statements to pool participants via face-to-face meetings, e-mail, and telephone, including by blaming delayed "dividend" payments on fictitious international "bankers" and financial institutions.

27.     In total, Defendants fraudulently solicited approximately $590,000 from at least 24 pool participants.  Defendants passed $132,880 of the funds they stole from some pool participants to other pool participants through "Ponzi"-like payments, and misappropriated the remaining $457,120 for themselves.  (Decl. of Patricia Gomersall ("Gomersall Decl."), ECF No. 10-4 ¶¶ 27, 36 & Ex. I).

## III.     CONCLUSIONS OF LAW

### A.     Default Judgment Is Warranted Against Cifuentes, Wee, and CFM

28.     Federal Rule of Civil Procedure 55(b) and New Jersey Court Rule 4:43-2 authorizes litigants to seek, and the Court to enter, default judgment against a party who has failed to plead or otherwise defend an action.  Fed. R. Civ. P. 55(b); N.J. Ct. R. 4:43-2.

29.     Three factors determine whether default judgment may be entered:  whether (1) defendants have been served with the summons and complaint and the court possesses jurisdiction; (2) the unchallenged facts of the complaint adequately allege a cause of action; and (3) entry of default judgment is proper, based upon certain issues within the Court's discretion.  *See Dellecese v. Assigned Credit Solutions, Inc.*, 2017 WL 957848, at *2 (D.N.J. Mar. 10, 2017) (quoting *Teamsters Health & Welfare Fund of Phila. v. Dubin Paper Co.*, 2012 WL 3018062, at *2 (D.N.J. July 24, 2012)).

30.     Where the first two factors above have been satisfied, courts in the Third Circuit consider three discretionary issues in determining whether entry of default judgment

is proper: (1) the prejudice to plaintiff if default judgment is denied; (2) whether defendants have a meritorious defense to the action; and (3) whether defendants are culpable for their default. *See U.S. v. $487,825.00 in U.S. Currency*, 484 F.3d 662, 664 (3d Cir. 2007); *see also CDK Glob., LLC v. Midwest Truck Sales, Inc.*, 2017 WL 838800, at *2 (D.N.J. Mar. 3, 2017).

31. As discussed below, all of the factors above support entry of default judgment against Defendants.

**B.  Jurisdiction and Venue**

32. This Court possesses jurisdiction over this action pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2012), which authorizes the CFTC to seek injunctive and other relief in a United States district court against any person whenever it shall appear to the CFTC that such person has engaged in any act or practice that violates the Act or Regulations.  The Court possesses jurisdiction over Cifuentes and Wee because they reside in this District and committed the violations of the Act and Regulations alleged in the Complaint within this District, and over CFM because it is the alter ego of Cifuentes and Wee, it conducted business in this District, and it maintained addresses in this District.

33. Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012), because the acts and practices in violation of the Act and Regulations occurred within this District.

**C.  The Complaint Has Adequately Pled All Four Causes of Action**

34. In considering a motion for default judgment, the Court takes "'the factual allegations of the complaint, except those relating to the amount of damages . . . as true.'"

*Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, 2011 WL 4729023, at *2

(D.N.J. Oct. 5, 2011) (quoting *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005)).

As described below, the Complaint has adequately pled all four asserted causes of action.

### i. Cifuentes and Wee Violated Section 4b(a)(2)(A)-(C) of the Act and Regulation 5.2(b) (Fraud in Connection with Forex Transactions)

35.      Section 4b(a)(2)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(2)(A), (C) (2012),

prohibits any person or entity from cheating, defrauding, or misleading another person in

connection with off-exchange commodity futures or forex contracts.  Section 4b(a)(2)(A)-(C)

of the Act applies to forex transactions as if they were futures contracts.  Section

2(c)(2)(C)(iv) of the Act, 7 U.S.C. § 2(c)(2)(C)(iv) (2012).

36.      Plaintiff may establish a violation of Section 4b(a)(1)(A) and (C) of the Act

by showing that Defendants made a material misrepresentation, misleading statement, or

deceptive omission with scienter.  *CFTC v. Rosenberg*, 85 F. Supp. 2d 424, 447 (D.N.J.

2000).  Scienter "is an 'intent to deceive, manipulate, or defraud,' and it may be shown either

by conscious behavior or recklessness."  *CFTC v. Equity Fin. Grp. LLC*, 572 F.3d 150, 159

(3d Cir. 2009) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976)).  A statement

or omission is material if "'a reasonable investor would consider it important in deciding

whether to make an investment.'"  *Rosenberg*, 85 F. Supp. 2d at 447 (quoting *Saxe v. E.F.

Hutton & Co., Inc.*, 789 F.2d 105, 109 (2d Cir. 1986)).  Account balances and profits

"constitute information that a reasonable investor would consider important in trading

commodity futures . . . ."  *Id.* at 448.

37.      Section 4b(a)(2)(B) of the Act prohibits the creation of false reports or

statements in connection with off-exchange futures or forex contracts.  "Delivering, or

causing the delivery of, false account statements to customers relating to forex trades . . . constitutes a violation of Section 4b(a)(2)(B) of the Act." *CFTC v. Total Call Grp.*, 2012 WL 1642196, at *7 (E.D. Tex. Mar. 30, 2012).

38.     Regulation 5.2(b) makes it unlawful, in connection with an off-exchange retail forex transaction, to use the mails or any means or instrumentality of interstate commerce to (1) cheat or defraud or attempt to cheat or defraud any person; (2) willfully make a false report or statement; or (3) willfully deceive any person by any means.

39.     The facts of the Complaint, taken as true for purposes of the instant motion, adequately allege that Cifuentes and Wee, through CFM, acted with scienter by intentionally making material misrepresentations and omissions to pool participants to entice them to deposit funds with Defendants, and then misappropriated those funds for their own benefit.

40.     To conceal their fraud, Defendants created and sent to pool participants via e-mail and otherwise fabricated account and performance statements that falsely reflected massive trading gains.  (*See* Gomersall Decl. ¶¶ 41-42 & Ex. K (fabricated account statements)).  Contrary to Defendants' misrepresentations, little if any trading occurred, no profits were made, and Defendants misappropriated pool participants' funds.  (*See* Gomersall Decl. ¶¶ 16-19, 28-42).

41.     The allegations of the Complaint adequately state claims against Defendants for violating Section 4b(a)(2)(A)-(C) of the Act and Regulation 5.2(b).  *See CFTC v. Siegel*, 2014 WL 7404537, at *6 (D.N.J. Dec. 30, 2014) (entering default judgment for CFTC because "[c]ourts have held that misappropriation of pool participant funds" violates Section 4b of the Act); *see also Total Call Grp.*, 2012 WL 1642196, at *7 (delivery of false forex

trading account statements violates Section 4b(a)(2)(B) of the Act); *CFTC v. Yu*, 2012 WL 3283430, at *5 (N.D. Cal. Aug, 10, 2012) (use of the telephone and e-mail to commit forex fraud violates Regulation 5.2(b)).

### ii. CFM Violated Section 4<u>o</u>(1)(A) and (B) of the Act and Regulation 4.41(a) (Fraud by a Commodity Pool Operator)

42.     Section 4<u>o</u>(1) of the Act, 7 U.S.C. § 6<u>o</u>(1) (2012), makes it unlawful for a commodity pool operator ("CPO") to use any means or instrumentality of interest commerce to (A) employ any device, scheme, or artifice to defraud a pool participant; or (B) engage in a transaction, practice, or course of business that operates as a fraud or deceit upon a pool participant.

43.     Regulation 5.4, 17 C.F.R. § 5.4 (2016), states that Part 4 of the Regulations, 17 C.F.R. §§ 4.1 – 4.41 (2016), applies to any person required to register as a CPO pursuant to Part 5 of the Regulations related to off-exchange forex transactions, 17 C.F.R. §§ 5.1 – 5.25 (2016).

44.     Regulation 4.41(a), 17 C.F.R. § 4.41(a) (2016), makes it unlawful for any CPO, or any principal of a CPO, to publish or distribute materials that (1) employ any device, scheme, or artifice to defraud a pool participant; or (2) involve any transaction, practice, or course of business which operates as a fraud or deceit upon a pool participant.

45.     During the Relevant Period CFM, through Cifuentes and Wee, acted as a CPO by soliciting, accepting, or receiving funds from the public while engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, for the purpose of, among other things, trading in off-exchange leveraged or margined forex contracts. Cifuentes and Wee acted as associated persons of a CPO because they were

partners, officers, employees, consultants, or agents of a CPO in a capacity that involved the solicitation of funds, securities, or property for participation in a commodity pool.

46. During the Relevant Period CFM, through Cifuentes and Wee, violated Section 4o(1)(A) and (B) of the Act and Regulation 4.41(a) by making material misrepresentations and omissions about the CFM pool to pool participants, by fabricating account statements, and by misappropriating pool participants' funds.

47. The Complaint allegations that support Plaintiff's forex fraud claims under Section 4b(a)(2)(A)-(C) of the Act also support Plaintiff's Section 4o(1)(A) and (B) fraud claims. *See CFTC v. Driver*, 877 F. Supp. 2d 968, 978 (C.D. Cal. 2012), *aff'd* 585 Fed. App'x 366 (9th Cir. 2014) ("The same intentional or reckless misappropriations, misrepresentations, and omissions of material fact violative of section 4b of the Act . . . also violate section 4o(1)(A)-(B) of the Act.")

### iii. CFM Violated Sections 2(c)(2)(iii)(I)(cc) and 4m(1) of the Act and Regulation 5.3(a)(2)(i) (Failure to Register as a Commodity Pool Operator)

48. Section 2(c)(2)(C)(iii)(I)(cc) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(cc) (2012), makes it unlawful for any person, unless registered with the Commission, to operate or solicit funds for any pooled investment vehicle that is not an eligible contract participant ("ECP") in connection with leveraged or margined forex transactions entered into with a person who is not described in Section 2(c)(2)(B)(i)(II)(aa) – (ff) of the Act, 7 U.S.C. § 2(c)(2)(B)(i)(II) (aa) – (ff) (2012).

49. At no time during the Relevant Period did CFM qualify as an ECP. *See* Section 1a(18) of the Act, 7 U.S.C. § 1a(18) (2012).

50. Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012), prohibits an unregistered CPO from using any means or instrumentality of interstate commerce in connection with its business as a CPO. Regulation 5.3(a)(2)(i), 17 C.F.R. § 5.3(a)(2)(i) (2016), requires forex CPOs to register with the Commission.

51. During the Relevant Period CFM, through Cifuentes and Wee, violated Sections 2(c)(2)(C)(iii)(I)(cc) and 4m(1) of the Act and Regulation 5.3(a)(2)(i) by soliciting funds for a pooled vehicle that transacted in off-exchange leveraged or margined retail forex transactions without first registering with the Commission as a CPO.

     **iv.  Cifuentes and Wee Violated Section 4k(2) of the Act and Regulations 3.12 and 5.3(a)(2)(ii) (Failure to Register as Associated Persons of a Commodity Pool Operator)**

52. Section 4k(2) of the Act, 7 U.S.C. § 6k(2) (2012), and Regulation 5.3(a)(2)(ii), 17 C.F.R. § 5.3(a)(2)(ii) (2016), require any person associated with a CPO as an officer, employee, or agent, in any capacity involving the solicitation of funds for participation in a commodity pool, including a commodity pool that trades in retail forex transactions, to register with the Commission. Regulation 3.12, 17 C.F.R. § 3.12 (2016), prohibits any person from acting as an associated person of a CPO unless registered as such with the Commission.

53. During the Relevant Period Cifuentes and Wee violated Section 4k(2) of the Act and Regulations 3.12 and 5.3(a)(2)(ii) by acting as officers and employees of, and by soliciting funds for, the CFM pool without being registered with the Commission as associated persons of a CPO. (*See* Gomersall Decl. ¶ 8 & Ex. B (NFA certificates of non-registration)).

**v. CFM is Liable for the Conduct of Cifuentes and Wee**

54.     Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2016), impose liability on a business association for the acts and omissions of its agents made within the scope of their employment or office.  CFM is liable for Cifuentes's and Wee's violations of the Act and Regulations alleged in the Complaint because Cifuentes and Wee were at all relevant times acting as agents of CFM.

**vi. Cifuentes and Wee are Liable for CFM's Conduct**

55.     Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012), imposes liability on controlling persons for the acts and omissions of the entity those persons control ("[a]ny person who, directly or indirectly, controls any person who has violated any provision of this Act … may be held liable for such violation . . . to the same extent as such controlled person. In such action, the Commission has the burden of proving that the controlling person did not act in good faith or knowingly induced, directly or indirectly, the acts or acts constituting the violation.")  Cifuentes and Wee are liable for CFM's conduct because CFM is an alter ego of Cifuentes and Wee, who were the only officers of CFM and at all times directed and controlled CFM.

56.     or knowingly induced, directly or indirectly, the acts or acts constituting the violation.")

**D.     Default Judgment is Proper**

57.     The Court, in its sound discretion, has determined that default judgment is proper and should be entered against Defendants.

58.     Default judgment is proper because it will prevent further prejudice to Plaintiff.  As a result of Defendants' failure to answer the Complaint, Plaintiff "has incurred additional costs, has been unable to move forward with the case, and has been delayed in receiving relief." *Electromagnetic Techs. Indus., Inc. v. CCOM*, 2015 WL 3879691, at *2 (D.N.J. June 22, 2015) (granting motion for default judgment).  Absent default judgment, Plaintiff will continue to be prejudiced by being hindered from fulfilling its congressional mandate of enforcing the Act.  *See SEC v. Fortitude Grp., Inc.*, 2017 WL 818604, at *2 (W.D. Pa. Feb. 10, 2017) (granting SEC's motion for default judgment because SEC would "be prejudiced by its inability to effectively enforce federal securities laws" if motion were denied).

59.     Default judgment is proper because Defendants have no meritorious defense to the action.  By failing to respond to the action, Defendants have "put forth no evidence or facts containing any information that could provide the basis for a meritorious defense." *HICA Educ. Loan Corp. v. Surikov*, 2015 WL 273656, at *3 (D.N.J. Jan. 22, 2015) (granting motion for default judgment).  As nothing on the face of the Complaint indicates that Defendants have a meritorious defense, default judgment is proper.  *See, e.g., Interpool, Inc. v. Four Horsemen, Inc.*, 2017 WL 1284766, at *4 (D.N.J. Mar. 24, 2017) (granting motion for default judgment).

60.     Default judgment is proper because Defendants are presumed to be culpable for their failure to respond to this action.  *See, e.g., Electromagnetic Techs.*, 2015 WL 3879691, at *2 ("[W]here Defendant has failed to respond, there is a presumption of

culpability.")  Culpability is also presumed because Defendants have failed to respond "without providing any reasonable explanation."  *Interpool*, 2017 WL 1284766, at *4.

61.     Accordingly, the Court enters default judgment against Defendants and orders the relief set forth below.

## IV.     PERMANENT INJUNCTION

62.     Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2012), authorizes the Commission to seek, and the Court to impose, injunctive relief against any person whenever it shall appear to the CFTC that such person has engaged in any act or practice that violates the Act or Regulations.

63.     The "'ultimate test'" for entry of an injunction under the Act "'is whether the defendant's past conduct indicates that there is a reasonable likelihood of further violations in the future.'"  *Siegel*, 2014 WL 7404537, at *9 (quoting *CFTC v. Wilshire Inv. Mgmt. Corp.*, 531 F.3d 1339, 1346 (11th Cir. 2008)).  Future violations of the Act or Regulations "may be inferred, or even presumed, from past unlawful conduct, and the absence of proof to the contrary."  *CFTC v. Am. Metals Exch. Corp.*, 693 F. Supp. 168, 171 (D.N.J. 1988) (citing *CFTC v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979)).

64.     The scope of injunctive relief can be tailored to meet the circumstances of the violations shown.  For example, upon the CFTC's showing of a violation, courts have entered permanent injunctions against future violations of the Act.  *See, e.g.*, *Rosenberg*, 85 F. Supp. 2d at 455 (permanently enjoining defendants "from future violations of" provisions of the Act).  Courts have also permanently enjoined defendants from registering with the CFTC and engaging in any commodity-related activity.  *See, e.g.*, *Wilshire*, 531 F.3d at 1346

(upholding the district court's permanent injunction prohibiting the defendants from "engaging in any commodity-related activity").

65.     As set forth above, the well-pleaded facts of the Complaint and the facts set forth in the Declaration of Patricia Gomersall establish that Defendants' unlawful conduct makes it highly likely that they will be repeat violators unless permanently restrained by this Court.

66.     As alleged, Defendants knowingly stole all of the money entrusted to them by spending it on themselves or passing it to other victims, often within a day of the funds clearing their accounts.  Rather than admit their wrongdoing, Defendants took pains to conceal their fraud by, among other things, fabricating documents, making false statements, and making "Ponzi"-like payments to pool participants.  Injunctive relief is appropriate in these circumstances.  *See Rosenberg*, 85 F. Supp. 2d at 454 (granting CFTC's motion for permanent injunction because defendants' misappropriation of customer funds was "egregiously fraudulent conduct" that made future violations of the Act likely).

67.     As shown above, the well-pleaded facts set forth in the Complaint and the Gomersall Declaration establish that:

(a)     Defendants violated Sections 2(c)(2)(C)(iii)(I)(cc), 4b(a)(2)(A)-(C), 4k, 4m(1), and 4o(1)(A) and (B) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6b(a)(2)(A)-(C), 6k, 6m(1), and 6o(1)(A) and (B) (2012); and Regulations 3.12, 4.41(a), 5.2(b), and 5.3(a)(2)(i), (ii), 17 C.F.R. §§ 3.12, 4.41(a), 5.2(b), and 5.3(a)(2)(i) and (ii) (2016); and

(b) there is a reasonable likelihood that Defendants will continue to violate the Act

and Regulations unless permanently restrained and enjoined by this Court.  The

intentional and egregious nature of Defendants' fraudulent conduct warrants

permanent injunctive relief, including registration and trading bans.

68.    Accordingly, Defendants are permanently restrained, enjoined, and prohibited

from directly or indirectly:

(a)    Engaging in conduct that violates Sections 2(c)(2)(C)(iii)(I)(cc),

4b(a)(2)(A)-(C), 4k, 4m(1), and 4o(1)(A) and (B) of the Act, 7 U.S.C.

§§ 2(c)(2)(C)(iii)(I)(cc), 6b(a)(2)(A)-(C), 6k, 6m(1), and 6o(1)(A) and (B) (2012);

and Regulations 3.12, 4.41(a), 5.2(b), and 5.3(a)(2)(i) and (ii), 17 C.F.R. §§ 3.12,

4.41(a), 5.2(b), and 5.3(a)(2)(i) and (ii) (2016);

(a)    trading on or subject to the rules of any registered entity (as that term

is defined in Section la(40) of the Act, 7 U.S.C. § la(40) (2012));

(b)    entering into any transaction involving "commodity interests" (as that

term is defined in Regulation 1.3(yy), 17 C.F.R. § 1.3(yy) (2014)) for their own

personal account or for any account in which they have a direct or indirect interest;

(c)    having any commodity interests traded on their behalf;

(d)    controlling or directing trading for or on behalf of any other person or

entity, whether by power of attorney or otherwise, in any account involving

commodity interests;

(e)    soliciting, receiving, or accepting any funds from any person for the

purpose of purchasing or selling any commodity interests;

(f)     applying for registration or claiming exemption from registration with

the Commission in any capacity, and engaging in any activity requiring registration or

exemption from registration with the Commission, except as provided for in

Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2016);

(g)     acting as a principal (as that term is defined in Regulation 3.1(a), 17

C.F.R. § 3.1(a) (2016)), agent, or any other officer or employee of any person

registered, exempted from registration, or required to be registered with the

Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9)

(2016);

(h)     Engaging in any business activities related to commodity interests.

## V.     RESTITUTION AND CIVIL MONETARY PENALTY

### A.     Restitution

69.     Section 6c(d)(3)(A) of the Act, 7 U.S.C. § 13a-1(d)(3)(A) (2012), authorizes

the Commission to seek, and the Court to impose, equitable remedies for violations of the

Act, including "restitution to persons who have sustained losses proximately caused by such

violation (in the amount of such losses)."  Courts calculate restitution "as the difference

between what Defendants obtained and the amount customers have already received back."

*CFTC v. Ross*, 2014 WL 6704572, at *3 (N.D. Ill. Nov. 26, 2014).  *See also CFTC v. Leben*,

2016 WL 7354359, at *9 (D.S.C. Aug. 5, 2016) ("restitution is determined by calculating the

total amount of funds solicited from victims of the fraud by a defendant, less any funds

returned to the victims by defendant.")

70.     Defendants' illegal conduct caused at least 24 pool participants to incur net

losses totaling $457,120, which reflects the total funds Defendants fraudulently solicited ($590,000) minus the funds they stole from some pool participants and passed to other pool participants in the form of "Ponzi"-like payments ($132,880). (*See* Gomersall Decl. ¶¶ 27, 36 & Ex. I).

71.     Accordingly, Defendants are ordered to pay, on a joint and several basis, restitution in the amount of $457,120 (four hundred fifty-seven thousand, one hundred twenty dollars), plus post-judgment interest thereon (the "Restitution Obligation"). Post-judgment interest shall accrue beginning on the date of entry of this Order and shall be determined pursuant to 28 U.S.C. § 1961 (2012).

72.     The Court appoints the National Futures Association ("NFA") as Monitor to distribute payments made against the Restitution Obligation to Defendants' pool participants. The Monitor shall collect restitution payments from Defendants and make distributions as set forth below. Because the Monitor is acting as an officer of this Court in performing these services, NFA shall not be liable for any action or inaction arising from NFA's appointment as Monitor, other than actions involving fraud.

73.     Defendants shall make Restitution Obligation payments under this Order to the Monitor in the name "Cifuentes/Wee Restitution Fund" and shall send such payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, to the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606, accompanied by a cover letter identifying Defendants and the name and docket number of this proceeding. Defendants shall simultaneously transmit copies of the cover letter and the form of payment

to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581.

74.     The Monitor shall oversee the Restitution Obligation and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to Defendants' pool participants identified by the CFTC, or may defer distribution until such time as the Monitor deems appropriate.  In the event that the amount of Restitution Obligation payments to the Monitor are of a *de minimis* nature such that the Monitor determines that the administrative cost of making a distribution to eligible pool participants is impractical, the Monitor may, in its discretion, treat such restitution payments as civil monetary penalty payments, which the Monitor shall forward to the CFTC pursuant to the instructions for civil monetary penalty payments set forth below.

75.     Defendants shall cooperate with the Monitor as appropriate to provide such information as the Monitor deems necessary and appropriate to identify Defendants' pool participants to whom the Monitor, in its sole discretion, may determine to include in any plan for distribution of any Restitution Obligation payments.  Defendants shall execute any documents necessary to release funds that they hold in any repository, bank, investment, or other financial institution, wherever located, in order to make partial or total payment toward the Restitution Obligation.

76.     The Monitor shall provide the CFTC at the beginning of each calendar year with a report detailing the disbursement of funds to Defendants' pool participants during the previous year.  The Monitor shall transmit this report accompanied by a cover letter identifying the name and docket number of this proceeding to the Chief Financial Officer,

Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581.

77.     The amounts payable to each pool participant shall not limit the ability of any pool participant to prove that a greater amount is owed from Defendants or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any pool participant that exist under state or common law.

78.     Pursuant to Federal Rule of Civil Procedure 71, each pool participant of Defendants who suffered a loss is explicitly made an intended third-party beneficiary of this Order and may seek to enforce this Order to obtain satisfaction of any portion of the Restitution Obligation that has not been paid by Defendants, to ensure continued compliance with any provision of this Order, and to hold Defendants in contempt for any violations of any provision of this Order.

79.     To the extent that any funds accrue to the U.S. Treasury for satisfaction of the Restitution Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

**B.      Civil Monetary Penalty**

80.     Section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1) (2012), and Regulation 143.8(a)(4)(ii)(B), 17 C.F.R. § 143.8(a)(4)(ii)(B) (2016), authorize the Commission to seek, and the Court to impose, a civil monetary penalty of triple Defendants' monetary gain from each violation of the Act or Regulations, or $167,728 per violation, whichever is greater.

81.     The Court considers numerous factors in determining an appropriate civil monetary penalty under the Act, including (1) whether Defendants' illegal acts violated core

provisions of the Act; (2) whether Defendants acted with scienter; (3) the consequences resulting from Defendants' violations; (4) the financial benefits to Defendants; and (4) the harm to Defendants' customers. *See Wilshire*, 531 F.3d at 1346; *see also CFTC v. Yorkshire Grp., Inc.*, 2016 WL 8256380, at *6 (E.D.N.Y. Aug. 19, 2016).

82.     Courts routinely award significant civil monetary penalties in cases involving fraud. *See, e.g., CFTC v. Onsa*, 2014 WL 2960345, at *1 (E.D. Pa. Mar. 20, 2014) (entering civil monetary penalty of triple defendants' gain in commodity pool fraud case due to "the egregiousness of the defendants' intentional conduct"); *see also CFTC v. SK Madison Commodities, LLC*, 2014 WL 3887755, at *5 (S.D.N.Y. June 9, 2014) (entering default judgment and ordering a civil monetary penalty of "triple the amount misappropriated" where defendants "committed repeated violations of core provisions of the[Act] and Regulations."); *CFTC v. Rolando*, 589 F. Supp. 2d 159, 174 (D. Conn. 2008) ("obtaining customer funds and then hiding [defendant's] true conduct from his customers were serious violations of the Act . . .that strike at the very core of the Act's regulatory system," requiring "a substantial civil monetary penalty.")

83.     Defendants' conduct warrants the imposition of a significant monetary penalty. Cifuentes and Wee, through CFM, committed repeated violations of the core antifraud provisions of the Act and Regulations that caused significant monetary losses to pool participants. In fraudulently soliciting approximately $590,000 in pool participants' funds, Cifuentes and Wee spent hundreds of thousands of dollars of their victims' money on personal expenses such luxury vehicles, jewelry, and clothing. (*See* Gomersall Decl. ¶¶ 28-39 & Exs. I, J).

84.     Given Defendants' intentional and egregious conduct, the Court believes that a civil monetary penalty reflecting triple the funds Defendants fraudulently misappropriated ($590,000) is proper to deter future fraudulent schemes in violation of the Act and Regulations.  This penalty is authorized by Section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1) (2012), and Regulation 143.8(a)(4)(ii)(B), 17 C.F.R. § 143.8(a)(4)(ii)(B) (2016).

85.     Accordingly, Defendants are ordered to pay, on a joint and several basis, a civil monetary penalty in the amount of $1,770,000 (one million, seven hundred seventy thousand dollars), plus post-judgment interest thereon ("CMP Obligation").  Post-judgment interest shall accrue beginning on the date of entry of this Order and shall be determined pursuant to 28 U.S.C. § 1961 (2012).

86.     Defendants shall pay the CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> Commodity Futures Trading Commission
> Division of Enforcement
> ATTN:  Accounts Receivables
> DOT/FAA/MMAC/AMZ-341
> CFTC/CPSC/SEC
> 6500 S. MacArthur Blvd.
> Oklahoma City, OK 73169
> (405) 954-7262 office
> (405) 954-1620 fax
> nikki.gibson@faa.gov

If payment by electronic funds transfer is chosen, Defendants shall contact Nikki Gibson or her successor at the address above to receive payment instructions and shall fully comply with those instructions.  Defendants shall accompany payment of the CMP

Obligation with a cover letter identifying Defendants and the name and docket number of this proceeding. Defendants shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, DC 20581.

## VI. MISCELLANOUS PROVISIONS

87. Partial Satisfaction: Acceptance by the CFTC or the Monitor of any partial payment of the Restitution Obligation or the CMP Obligation shall not be deemed a waiver of Defendants' obligation to make further payments pursuant to this Order, or a waiver of the CFTC's right to seek to compel payment of any remaining balance.

88. Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Order shall be binding upon Defendants, upon any person under their authority or control, and upon any person who receives actual notice of this Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Defendants.

89. Continuing Jurisdiction of this Court: This Court shall retain jurisdiction of this action to ensure compliance with this Order and for all other purposes related to this action, including any motion by Defendants to modify, or for relief from, the terms of this Order.

**SO ORDERED** on this _20th_ day of _____April_____, 2018.


_s/Esther Salas_
**Hon. Esther Salas**
United States District Judge